# Illinois Official Reports

## Appellate Court

---

### *Collins v. Department of Health & Family Services ex rel. Paczek*,
### 2014 IL App (2d) 130536

---

| | |
|---|---|
| Appellate Court Caption | GARY W. COLLINS, Petitioner-Appellant, v. THE DEPARTMENT OF HEALTH AND FAMILY SERVICES *ex rel.* WENDY PACZEK, Respondent-Appellee. |
| District & No. | Second District<br>Docket No. 2-13-0536 |
| Filed | June 26, 2014 |
| Rehearing denied | January 23, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a dispute over a child support order entered with respect to a child of a couple who were never married, the dismissal of the father's petition to abate or reduce the support ordered by an Illinois trial court was affirmed, since the petition sought to modify the support order after the father, mother and child had left Illinois, and the appellate court adopted the rationale of the majority of other jurisdictions in holding that under the Uniform Interstate Family Support Act, once the obligor, the obligee and the minor child or children subject to a support order were no longer residing in Illinois, the Illinois court lost continuing jurisdiction to modify that order, but the Illinois court retained jurisdiction to enforce the order until a different jurisdiction obtained continuing exclusive jurisdiction over the order; therefore, the Illinois court's dismissal of the father's petition to enforce the order for indirect contempt based on the mother's failure to contribute to the child's health insurance premiums and travel expenses to visit the father was reversed and the cause was remanded. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 09-F-0247; the Hon. Thomas C. Dudgeon, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |

| Counsel on Appeal | Michael J. Scalzo and Todd D. Scalzo, both of Scalzo Law Offices, of Wheaton, for appellant. |
|---|---|
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Janon E. Fabiano, Assistant Attorney General, of counsel), for appellee. |
| Panel | JUSTICE HUTCHINSON delivered the judgment of the court, with opinion. Justices Schostok and Spence concurred in the judgment and opinion. |

## OPINION

¶ 1     In 1997, the Illinois Department of Public Aid (IDPA) entered an administrative order declaring petitioner, Gary W. Collins, the biological father of A.C. (the minor) and ordering him to pay child support to Wendy Paczek, the minor's mother. Thereafter, Paczek and the minor relocated to Nashville, Tennessee, and petitioner relocated to a suburb of Columbus, Ohio. While living in Ohio, petitioner filed in the circuit court of Du Page County a petition to abate or reduce child support and a petition for indirect civil contempt. Petitioner served discovery requests on respondent, the Illinois Department of Health and Family Services (IDHFS), which the trial court had previously granted leave to intervene on Paczek's behalf. The trial court, *sua sponte*, entered an order transferring the matter to Tennessee after finding that neither party resided in Illinois. Petitioner timely appealed, contending that the trial court erred in dismissing both of his petitions for lack of jurisdiction. We affirm in part and reverse in part.

¶ 2                    I. BACKGROUND

¶ 3     On August 13, 1997, IDPA entered an administrative paternity order that declared petitioner as the minor's biological father. Approximately one month later, IDPA ordered petitioner to pay child support to Paczek. In May 2008, Paczek and the minor moved from Rockford, Illinois, to Nashville, Tennessee.

¶ 4     On April 22, 2009, petitioner filed a parentage petition requesting that the trial court modify the administrative paternity order. Petitioner alleged that IDPA had increased his child support obligation and failed to consider that he paid for the minor's health insurance. On August 26, 2009, the trial court entered an agreed order providing that "any issues regarding child support will be dealt with administratively. Any issues that cannot be dealt with administratively will be reserved [and] dealt with judicially."

¶ 5     On September 30, 2009, the trial court entered an agreed order for temporary child support. The trial court also entered an order granting IDHFS leave to intervene on Paczek's behalf for

child support issues. On October 6, 2009, the parties entered an agreed order for custody and visitation, where the parties agreed that Paczek would contribute $50 per month for the minor's medical premiums and that the parties would split equally the costs of any uncovered medical expenses. The order further provided that petitioner would be responsible for 66% of the minor's travel expenses incurred when traveling to see petitioner, with Paczek responsible for the remaining 33%.

¶ 6    On February 5, 2010, petitioner filed a petition to modify child support after he had been laid off from his job in Chicago. On May 14, 2010, the trial court entered an agreed order reducing petitioner's child support. In August 2010, petitioner moved to Columbus, Ohio, for a new job.

¶ 7    On September 5, 2012, after being laid off from his job in Ohio, petitioner filed a petition in the trial court to abate or to reduce child support below the statutory guidelines. Petitioner also served IDHFS with discovery requests, including interrogatories and a financial disclosure statement. On September 25, 2012, both petitioner and IDHFS appeared at a hearing on the petition, and the trial court granted IDHFS 21 days to respond to petitioner's discovery requests. On October 5, 2012, IDHFS filed objections to petitioner's discovery requests.

¶ 8    On October 10, 2012, petitioner filed a petition for indirect civil contempt against Paczek for her failure to provide her portion of the minor's health insurance and travel expenses. The petition alleged that petitioner resided in Ohio; Paczek and the minor lived in Tennessee; the minor visited petitioner four to six times per year; and Paczek had failed to pay petitioner her share of the minor's health insurance and travel expenses.

¶ 9    On October 18, 2012, IDHFS filed its response to petitioner's petition to abate or to reduce child support. The response did not object to the trial court's jurisdiction. Petitioner and IDHFS appeared before the trial court on November 14, 2012; Paczek did not appear. The parties reached a partial agreement on petitioner's outstanding discovery requests, and the trial court continued the matter until December 19, 2012, for a status hearing on the remaining discovery requests, with which IDHFS ultimately complied.

¶ 10   At the December 19, 2012, hearing, the trial court ordered that all matters be transferred to Nashville, Tennessee. The trial court's order found that neither party resided in Illinois and that the case was being transferred "[o]n the [c]ourt's own motion."

¶ 11   On January 18, 2013, petitioner filed a motion to reconsider. Petitioner argued that, pursuant to the Uniform Interstate Family Support Act (the Act) (750 ILCS 22/100 *et seq.* (West 2012)), the trial court retained jurisdiction to enforce its orders and therefore the trial court had jurisdiction. Petitioner also attached an affidavit averring that he owned a home in Du Page County; he moved to Ohio for a job; he had been interviewing for jobs in the Chicago area after having been laid off; he had taken steps to begin the process of moving back to Illinois; and he did not intend to remain in Ohio. IDHFS responded to petitioner's motion to reconsider by arguing that, while the trial court retained jurisdiction to enforce previously entered support orders, it did not have jurisdiction to modify such orders.

¶ 12   On April 25, 2013, the trial court denied petitioner's motion to reconsider. The trial court concluded that "[a] definite plan [to move back to Illinois] does not create residency. *** [T]he facts of this case are that no one resides in Du Page County *** and ha[s] not resided in this jurisdiction for many years. *** [T]here is no nexus to [Illinois] given the use of the term residence in the statute that would give me continuing exclusive jurisdiction over these

proceedings." The trial court's order specified that it "did not retain continuing jurisdiction to enforce child support." Petitioner timely appealed.

¶ 13                                II. ANALYSIS

¶ 14        The only issue in this appeal is whether the trial court erred in dismissing petitioner's petitions to modify and for indirect civil contempt.

¶ 15        Resolution of this issue requires us to interpret the Act (750 ILCS 22/100 *et seq.* (West 2012)) and our review is, therefore, *de novo*. See *In re Marriage of Best*, 228 Ill. 2d 107, 116 (2008) (citing *Fisher v. Waldrop*, 221 Ill. 2d 102, 112 (2006)). The primary objective of statutory interpretation is to give effect to the intent of the legislature, and the most reliable indicator of intent is the language of the statute given its plain, ordinary, and popularly understood meaning. *In re Marriage of Rogers*, 213 Ill. 2d 129, 136 (2004). The statute " 'should be read as a whole with all relevant parts considered.' " *Gardner v. Mullins*, 234 Ill. 2d 503, 511 (2009) (quoting *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990)). If the statutory language is clear, a reviewing court does not need to resort to extrinsic aids of construction, such as legislative history (*Northern Kane Educational Corp. v. Cambridge Lakes Education Ass'n*, 394 Ill. App. 3d 755, 758 (2009)), and, in such situations, a court may not depart from the plain language of the statute and read into it exceptions, limitations, or conditions that are inconsistent with the express legislative intent. *Landheer v. Landheer*, 383 Ill. App. 3d 317, 321 (2008).

¶ 16        Section 205 of the Act provides:

         "(a) A tribunal of this State that has issued a support order *** shall exercise continuing, exclusive jurisdiction to modify its child-support order if the order is the controlling order and:

             (1) at the time of the filing of a request for modification this State is the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued; or

             (2) even if this State is not the residence of the obligor, the individual obligee, or the child for whose benefit the support is issued, the parties consent in a record or in open court that the tribunal of this State may continue to exercise the jurisdiction to modify its order." 750 ILCS 22/205 (West 2012).

¶ 17        "The [Act] creates a mechanism which facilitates the reciprocal enforcement or modification of child support awards entered in Illinois and other states which have also adopted the [Act]." *In re Marriage of Hartman*, 305 Ill. App. 3d 338, 342 (1999). The National Conference of Commissioners on Uniform State Laws originally promulgated the model Uniform Interstate Family Support Act (the Model UIFSA) in 1992 and Congress mandated in 1996 that states adopt the Model UIFSA to remain eligible for federal funding of child support enforcement. *In re Marriage of Gulla*, 234 Ill. 2d 414, 425 (2009) (citing 42 U.S.C. § 666(f) (2000)). Therefore, the Act seeks to provide "unity and structure in each state's approach to the modification and enforcement of child support orders." (Internal quotation marks omitted.) *Gulla*, 234 Ill. 2d at 426. Our supreme court has "long recognized" that a court must construe uniform legislation so as to give effect to the purpose of promoting harmony in the law. *Id.*

¶ 18        In *Zaabel v. Konetski*, 209 Ill. 2d 127 (2004), our supreme court addressed section 205 of the Act. There, the trial court entered an order dissolving the parties' marriage and the

dissolution order incorporated a written settlement agreement. *Id.* at 130. That agreement provided that the wife would retain custody of the minor children and that the husband would pay for certain " 'extraordinary' " medical expenses incurred by the children. *Id.* After the wife and the minors moved to Iowa, and the husband moved to Arizona, the wife brought a petition for indirect civil contempt in Illinois, alleging that the husband had failed to pay extraordinary medical expenses. *Id.* The husband moved to dismiss the petition on the basis that the trial court lacked both subject matter and personal jurisdiction. *Id.* at 131. The trial court denied the motion to dismiss, and the husband appealed with respect to subject matter jurisdiction only. *Id.*

¶ 19 On appeal, the husband noted that Illinois was no longer the residence of "the obligor, the obligee, or the children." *Id*. at 133. The husband argued that, pursuant to section 205(a) of the Act, jurisdiction remained in Illinois until none of the parties resided in Illinois or section 205(a)(2) was satisfied, whichever occurred first. See *id.* Finding section 205(a) ambiguous, the supreme court looked to authority from other jurisdictions. The court noted that, as other courts had found, the official comment to section 205 of the Model UIFSA stated that, " 'if all the relevant persons–the obligor, the individual obligee, and the child–have permanently left the issuing state, the issuing state no longer has an appropriate nexus with the parties or child to justify exercise of jurisdiction to modify.' " *Id.* at 134 (quoting Unif. Interstate Family Support Act § 205 (1996), Comment, 9 U.L.A. 285-86 (1999)). The court concluded that the drafters' intent for section 205(a) of the Model UIFSA was "very persuasive evidence of the intent of our legislature, because section 205(a) of the Act copies section 205(a) of the [Model UIFSA] verbatim." *Id.* at 135.

¶ 20 Nonetheless, the *Zaabel* court concluded that section 205(a) applied only to the court's jurisdiction to modify a support order. *Id.* Consistent with holdings from courts in other jurisdictions, section 205(a) did not apply to the trial court's jurisdiction to enforce a support order. *Id.* (citing *Linn v. Delaware Child Support Enforcement*, 736 A.2d 954, 964 (Del. 1999) (holding that jurisdiction to enforce remains in the issuing state so long as no other state has assumed continuing exclusive jurisdiction)). Therefore, the trial court had jurisdiction to enforce unless the husband was able to establish that the wife's petition was "an attempt to modify, not merely enforce, the support order that the circuit court entered when [the parties] divorced." *Id.* Because the husband did not attempt to argue that the wife's petition for indirect civil contempt was a petition to modify, the husband's motion to dismiss failed. *Id.* at 136. Thus, the clear implication of *Zaabel* is that, after all of the parties have permanently left the state that issued the support order, that state retains jurisdiction to enforce the order, but not to modify it.

¶ 21 Other jurisdictions that have addressed this issue reached a similar conclusion. In *Jurado v. Brashear*, 2000-1306 (La. 3/19/01); 782 So. 2d 575, the father and the mother had two children who were born in Louisiana. *Id.* p. 2. After the father moved to Mississippi, a Louisiana court issued an order obligating the father to pay child support because the court awarded the mother sole custody. *Id.* Thereafter, the mother and the minor children moved to Ohio. Six months after leaving Louisiana, the mother brought a motion in Louisiana to increase child support, based on an alleged increase in the father's income. *Id.* The trial court entered an order increasing child support. The intermediate reviewing court affirmed, concluding that the trial court retained jurisdiction to modify its support order even though the obligor, the obligee, and the children had all left the state. *Id.*

¶ 22    The Louisiana Supreme Court disagreed. The court began its analysis by noting that, in 1995, Louisiana adopted its version of the Act, which mirrored the Model UIFSA. The court noted that a court in Louisiana that has issued a support order retains "continuing, exclusive jurisdiction *** (1) as long as this state remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued." *Id.* p. 5 (quoting La. Child. Code Ann. art. 1302.5 (1996)). The court summarized that provision, along with others, as providing that, once a support order is issued, the issuing court retains jurisdiction until (1) the obligor, the individual obligee, and the children all establish residency outside of the issuing state, (2) the parties consent in writing to continuing exclusive jurisdiction by another state, or (3) another state modifies the order of the issuing state in compliance with the UIFSA. *Id.* p. 6. Thus, the court concluded that, although a court retained jurisdiction to enforce an order, "the issuing court cannot *modify* a child-support order after the obligor, obligee, and child all leave the state permanently." (Emphasis in original.) *Id.* p. 7-8. Because the mother sought a modification of a prior order, in the form of an increase in support payments, the court concluded that her request for modification should have been dismissed. *Id.* p. 9.

¶ 23    More recently, the California Court of Appeals concluded that, based on its version of the Model UIFSA, a court lost jurisdiction to modify a support order once the obligor, the obligee, and the minor children had moved out of the state. *In re Marriage of Haugh*, 170 Cal. Rptr. 3d 683 (Cal. Ct. App. 2014) ("[C]ourt did not have continuing, exclusive jurisdiction to modify the original child-support order after the individual parties and their child moved to other states and did not consent in writing to California's continuing jurisdiction or authority over the case."). As the court in *Haugh* noted:

> " '*Virtually every jurisdiction that has addressed this issue has concluded that the issuing tribunal loses subject matter jurisdiction when all of the parties to the child support action have moved outside the state.* See *Knowlton v. Knowlton*, 2005 OK CIV APP 22, 110 P.3d 578, 579 (Okla. Civ. App. 2005); *In re Marriage of Metz*, 31 Kan. App. 2d 623, 69 P.3d 1128, 1132 (Kan. Ct. App. 2003) (Kansas court no longer had continuing, exclusive jurisdiction to modify the child support order when mother, father, and children had moved from Kansas); *Cohen v. Powers*, 180 Or. App. 409, 43 P.3d 1150, 1152 (Or. Ct. App. 2002) (Alabama court no longer had continuing, exclusive jurisdiction over support order under [the] UIFSA because neither party resided in Alabama); *Jurado v. Brashear*, 782 So. 2d 575, 580-81 (La. 2001) (Louisiana court lost continuing, exclusive jurisdiction to modify child support after the parties and children left the state); *Etter v. Etter*, 2001 OK CIV APP 18, 18 P.3d 1088, 1090 (Okla. Civ. App. 2001) (trial court did not have jurisdiction under [the] UIFSA to modify child support after both parties had moved out of state); *LeTellier v. LeTellier*, 40 S.W.3d 490, 493-94 (Tenn. 2001) ([the] UIFSA does not confer subject matter jurisdiction upon the Tennessee court to hear mother's petition to modify the District of Columbia's support order); *In re B.O.G.*, 48 S.W.3d 312, 318 (Tex. App. 2001) (Texas court no longer had jurisdiction to modify the support order under [the] UIFSA because the parties no longer resided in Texas).' " (Emphasis in original.) *Id*. at 690 (quoting *Lunceford v. Lunceford*, 204 S.W.3d 699, 704 (Mo. Ct. App. 2006)).

The *Haugh* court's recitation of how other jurisdictions have interpreted continuing exclusive jurisdiction under their versions of the UIFSA is consistent with our research. We are aware of only one court that concluded that an issuing state retains continuing exclusive jurisdiction

- 6 -

after all parties have left the state. See *In re Marriage of Wareham*, 791 N.W.2d 562, 565-66 (Minn. Ct. App. 2010) (holding that "an issuing Minnesota tribunal retains continuing, exclusive jurisdiction over its child-support order even if none of the parties or their children remain state residents unless all of the individual parties file consents for another state to assume jurisdiction").

¶ 24    In the present case, we adopt the rationale of the majority of other jurisdictions. Therefore, we conclude that, once the obligor, the obligee, and the minor children who are subject to a support order no longer reside in Illinois, the issuing Illinois court loses continuing exclusive jurisdiction to *modify* that order. Our holding is consistent with our supreme court's conclusion that our legislature intended that, once the obligor, the obligee, and the minor children no longer reside in the issuing state, that state lacks a sufficient nexus with the parties to justify modifying a support order. See *Zaabel*, 209 Ill. 2d 127.

¶ 25    Nonetheless, we also conclude that, until a different jurisdiction obtains continuing exclusive jurisdiction over a support order, Illinois, as the issuing state, retains jurisdiction to *enforce* that order. *Id.* at 135. In the present case, therefore, the trial court erred when it dismissed petitioner's October 10, 2012, petition for indirect civil contempt, which sought to enforce a prior order providing that Paczek would pay $50 per month for the minor's health insurance, 50% of the minor's uncovered medical expenses, and 33% of his travel expenses.

¶ 26    We recognize that, as petitioner notes, challenging a court's personal jurisdiction is an affirmative defense that generally must be raised before filing a responsive pleading. See 735 ILCS 5/2-301(a-5) (West 2012). While a party must raise an affirmative defense or that defense will be forfeited, there are certain situations where a court should *sua sponte* consider an affirmative defense. In *First Mortgage Co. v. Dina*, 2014 IL App (2d) 130567, this court considered whether the defendants forfeited an affirmative defense, that a mortgage lender was not properly licensed, by failing to timely raise that defense. *Id.* ¶ 1. We noted that an affirmative defense that was not timely raised is typically forfeited. *Id.* ¶ 25. Nonetheless, we also noted that a court should consider whether an agreement is unenforceable as against public policy even if the parties do not raise the issue and that "the defense is unlike an ordinary affirmative defense, such as one based on the statute of limitations; the difference is due to the public interest in the outcome." *Id.* We emphasized that, regardless of how an affirmative defense is raised, the plaintiff must have a fair opportunity to respond, which it had. *Id.*

¶ 27    We believe that a similar rationale should be employed here. This is not a typical personal-jurisdiction affirmative defense where a defendant asserts that he lacks sufficient minimum contacts. Rather, the issue here is whether the trial court had authority to modify an existing support order under the Act, a statute intended to promote "unity and structure in each state's approach to the modification and enforcement of child support orders." (Internal quotation marks omitted.) *Gulla*, 234 Ill. 2d at 426. Thus, the public, both within this state and in other jurisdictions, has a compelling interest in a court's following its state's version of the Model UIFSA, even when that issue is not raised by the parties. We also emphasize, as we did in *Dina*, that the record reflects that petitioner had a fair opportunity to respond to the trial court's decision to dismiss the petition, during the hearing on petitioner's motion to reconsider. See *Dina*, 2014 IL App (2d) 130567, ¶ 25.

¶ 28    We do, however, reject petitioner's argument that, pursuant to section 15(b) of the Illinois Parentage Act of 1984 (the Parentage Act) (750 ILCS 45/15(b) (West 2012)) and section 511

of the Illinois Marriage and Dissolution of Marriage Act (the Marriage Act) (750 ILCS 5/511 (West 2012)), the trial court retained jurisdiction to modify the support order. Section 15(b) provides that failing to comply with an order entered pursuant to the Parentage Act "shall be punishable by contempt." 750 ILCS 45/15(b) (West 2012). The provision does not speak to modifying a prior support order after the parties have left Illinois. Further, section 511 of the Marriage Act addresses enforcement and modification of a marriage-dissolution order. Because the parties in the present case were never married, a marriage-dissolution order is not at issue in this appeal and we will not issue an advisory opinion regarding how the Act affects section 511 of the Marriage Act. See *In re John Doe Investigation*, 2011 IL App (2d) 901355, ¶ 7 (noting that a reviewing court will not issue advisory opinions merely to set precedent or guide future litigation).

¶ 29 Finally, we reject petitioner's argument that IDHFS consented to the trial court's continuing exclusive jurisdiction to modify the support order. Petitioner argues that IDHFS's response to the petition to modify meets the requirement in section 205(a)(2) that the parties consent "in a record" to the court's continuing exclusive jurisdiction (750 ILCS 22/205(a)(2) (West 2012)), with "record" being defined as "information that is inscribed on a tangible medium or that is stored in an electric or other medium and is retrievable in perceivable form" (750 ILCS 22/102 (West 2012)). Petitioner has not provided any authority for his assertion that filing a response constitutes "consent," and we deem this issue forfeited pursuant to Illinois Supreme Court Rule 341(h)(7) (eff. July 1, 2008). See *Wolfe v. Menard, Inc.*, 364 Ill. App. 3d 338, 348 (2006) (noting that a reviewing court is not a depository in which the appealing party may dump the burden of argument).

¶ 30                               III. CONCLUSION

¶ 31 For the foregoing reasons, we affirm the trial court's dismissal of petitioner's September 5, 2012, petition to abate or to reduce child support, because that petition sought to modify a prior support order after the parties had left Illinois. However, we reverse the trial court's dismissal of petitioner's October 10, 2012, petition for indirect civil contempt for Paczek's failure to contribute to the minor's health insurance and travel expenses, because the trial court retained jurisdiction to enforce that order. We remand the cause.

¶ 32 Affirmed in part and reversed in part; cause remanded.