# Illinois Official Reports

## Appellate Court

*In re Marriage of Edelman*, 2015 IL App (2d) 140847

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF MELISSA EDELMAN, Petitioner-Appellant, and JOHN F. PRESTON, Respondent-Appellee. |
| District & No. | Second District<br>Docket No. 2-14-0847 |
| Filed<br>Modified upon<br>denial of rehearing | May 21, 2015<br><br>August 14, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 10-D-1400; the Hon. Veronica M. O'Malley and the Hon. Elizabeth M. Rochford, Judges, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |
| Counsel on Appeal | Denis J. McKeown and Joseph C. McKeown, both of Denis J. McKeown & Associates, of Waukegan, for appellant.<br><br>C. Jeffrey Thut, of Roach, Johnston & Thut, of Libertyville, for appellee. |

PRESIDING JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Jorgensen and Birkett concurred in the judgment and opinion.

## OPINION

¶ 1 In 2010, the circuit court of Lake County entered an agreed order enrolling a foreign judgment–the Connecticut judgment for dissolution of marriage between the petitioner, Melissa Edelman, and the respondent, John Preston–in Lake County. In 2013, Melissa filed petitions under Illinois law for contribution to college expenses, to increase child support, and to establish adult child support. The trial court dismissed the petitions on the basis that, under the federal Full Faith and Credit for Child Support Orders Act (Full Faith and Credit Act) (28 U.S.C. § 1738B (2006)), Connecticut law governed any proceedings related to the judgment, and the petitions sought relief that was not available under Connecticut law. Melissa appealed, arguing that the Full Faith and Credit Act did not bar her from seeking relief under Illinois law. We affirm in part, reverse in part, and remand.

¶ 2 I. BACKGROUND

¶ 3 The parties married in 1990 and were divorced in 2002. At the time of the divorce, the parties and their two minor children lived in Connecticut. A judgment of dissolution that incorporated a marital settlement agreement was entered by a Connecticut court on May 16, 2002. Pursuant to the marital settlement agreement, the parties shared joint legal custody of the children and Melissa had primary residential custody of the children. The agreement provided that each party would pay the other $1 per year in child support and $1 per year in alimony.

¶ 4 In 2003, Melissa (who remarried) and the children moved to Illinois. In August 2004, a Connecticut court entered an order modifying the judgment of dissolution. The order required John to pay child support of $188 per week to Melissa, and to pay 25% of the children's medical expenses that were not covered by insurance. (Henceforth, we will refer to the judgment of dissolution, as modified in 2004, as the "Connecticut judgment.")

¶ 5 In 2008, John also moved to Illinois. In July 2010, Melissa filed a petition in the Lake County circuit court to enroll the Connecticut judgment "in order to modify and/or enforce" that judgment in Illinois. At the same time, she filed a petition for a rule to show cause why John should not be held in contempt for failure to pay child support and over $18,000 of medical expenses not covered by insurance. John was served with the petition and filed an appearance.

¶ 6 On August 31, 2010, John filed a motion seeking to compel Melissa to cooperate in having the children participate in John's remarriage ceremony. That same date, the trial court entered an agreed order. The agreed order granted Melissa's petition to enroll the Connecticut judgment in Lake County; provided that the children would attend John's wedding; and set a briefing schedule and hearing date on Melissa's petition for a rule to show cause. In December 2010, the trial court found John in indirect civil contempt for failing to pay child support and uncovered medical expenses, and issued a rule to show cause. John filed a response. At some

point in late 2010 or 2011, John moved to Florida. After delays caused by the withdrawal of various attorneys, in October 2011 the trial court entered an order finding that John had purged himself of contempt by paying Melissa over $21,000 in open court.

¶ 7 On May 22, 2013, Melissa filed another petition for a rule to show cause for failure to pay child support and uncovered medical expenses. That same day, she also filed a petition seeking John's contribution to college expenses pursuant to section 513(a)(2) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/513(a)(2) (West 2012)). On June 11, 2013, John filed responses to these petitions. He also filed a motion to dismiss the latter petition pursuant to Illinois's version of the Uniform Interstate Family Support Act (Family Support Act) (750 ILCS 22/101 *et seq.* (West 2012)), arguing that Melissa could not seek college expenses, because Connecticut law applied to matters arising from the Connecticut judgment and Connecticut did not have a college contribution statute that would apply to him. Finally, John filed a petition to decrease his child support pursuant to sections 505 and 510 of the Marriage Act (750 ILCS 5/505, 510 (West 2012)).

¶ 8 On July 24, 2013, Melissa filed another petition, seeking to increase child support under sections 505 and 510 of the Marriage Act, and to establish adult child support under section 513(a)(1), on the basis that the older child was disabled.

¶ 9 On July 26, 2013, the trial court granted John's motion to dismiss Melissa's petition for contribution to college expenses. The trial court began by finding that the Connecticut judgment had been properly enrolled by the parties and that the court had personal and subject matter jurisdiction. It further found that, through the parties' prior agreement, Illinois had authority to modify the Connecticut judgment as to child support. Accordingly, the key issue was whether Illinois or Connecticut law should be applied to Melissa's petition for contribution toward college expenses. The trial court found that subsection (h)(2) of the Full Faith and Credit Act (28 U.S.C. § 1738B(h)(2) (2006)) required it to apply the law of Connecticut in any proceeding seeking the modification of the Connecticut judgment. It further found that Connecticut first enacted a statute permitting parents to seek contribution to college expenses in 2002, and that statute (Conn. Gen. Stat. § 46b-56c (2011)) by its terms applied only to marital settlement agreements entered after October 1, 2002. The judgment in the parties' divorce had been issued before that, in May 2002. Thus, the trial court reasoned, Melissa could not seek educational expenses under Connecticut law, and it could not order such relief.

¶ 10 Melissa moved for reconsideration, raising a host of arguments. On January 29, 2014, the trial court entered an order denying her motion. The trial court's ruling essentially reiterated its previous reasoning.

¶ 11 Melissa filed a notice of appeal, but we dismissed that appeal, finding that we lacked jurisdiction because her July 24, 2013, petition was still pending and the trial court had not made a finding permitting an immediate appeal pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010). On July 30, 2014, the trial court entered an order denying Melissa's July 24, 2013, petition to increase child support and for adult child support, "for the reasons stated in the orders dated July 26, 2013, and January 29, 2014." It also found that there was no just cause to delay enforcement or appeal of its rulings. Melissa then filed the present appeal, challenging the trial court's orders of July 26, 2013, January 29, 2014, and July 30, 2014.

## II. ANALYSIS

The sole issues presented in this appeal concern the proper interpretation of various statutes relating to the modification of child support orders. We review such issues *de novo*. *Lee v. John Deere Insurance Co.*, 208 Ill. 2d 38, 43 (2003). To determine the intent of a statute, we begin by examining its language, which is the most reliable indicator of the legislature's objectives in enacting a particular law. *Yang v. City of Chicago*, 195 Ill. 2d 96, 103 (2001). The statutory language must be afforded its plain and ordinary meaning, and where the language is clear and unambiguous we must apply the statute without resort to further aids of statutory construction. *County of Knox ex rel. Masterson v. Highlands, L.L.C.*, 188 Ill. 2d 546, 556 (1999). We will not depart from the plain language of a statute by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent. *Petersen v. Wallach*, 198 Ill. 2d 439, 446 (2002). "One of the fundamental principles of statutory construction is to view all provisions of an enactment as a whole," and thus "words and phrases must be interpreted in light of other relevant provisions of the statute." *J.S.A. v. M.H.*, 224 Ill. 2d 182, 197 (2007).

### A. Family Support Act

We begin with the Family Support Act, which was designed to facilitate the reciprocal enforcement of child support orders between states. *Collins v. Department of Health & Family Services ex rel. Paczek*, 2014 IL App (2d) 130536, ¶ 17. The Family Support Act is based upon the model Uniform Interstate Family Support Act (Model Act), which has now been adopted by all 50 states. *Id.* Given the statutory goal of creating a unified approach in every state for the modification and enforcement of interstate child support orders, we must construe the Family Support Act in harmony with existing interpretations of the Model Act, including the case law of other states. *Id.* (citing *In re Marriage of Gulla*, 234 Ill. 2d 414, 426 (2009)).

#### 1. Jurisdiction and Authority to Modify Interstate Child Support Order

The Family Support Act sets out various requirements that must be met before an Illinois court may modify a child support order that was initially entered in another state (the "issuing state"). See, *e.g.*, 750 ILCS 22/611 (West 2012) (governing modification where all parties and the child(ren) have left the issuing state and the parties reside in different states); 750 ILCS 22/613 (West 2012) (where all parties and the child(ren) have left the issuing state and the parties both reside in Illinois). Here, neither party disputes the trial court's determination that it had both personal jurisdiction over them and subject matter jurisdiction to address their disputes involving the Connecticut judgment. We agree with this determination. See *McCormick v. Robertson*, 2015 IL 118230, ¶¶ 19, 22 (although the Family Support Act speaks of a forum state's "jurisdiction" to modify another state's child support orders, this term should be interpreted as "authority" to modify, not subject matter jurisdiction; except for administrative appeals, subject matter jurisdiction is conferred by the Illinois Constitution, and any deviation from the provisions of the Family Support Act affects only the correctness of the trial court's order, not jurisdiction).

The trial court here also found that it had authority under the Family Support Act to modify the child support provisions of the Connecticut judgment. On appeal, John disputes this, arguing that, because he no longer resides in Illinois, section 611(a) of the Family Support Act

governs the ability of Illinois courts to modify the Connecticut judgment, and the requirements of that section are not met here. (Among other things, section 611(a) requires that the person seeking modification–here, Melissa–must not be a resident of Illinois, or else both parties must have filed, in the issuing state, a consent to permit modification by Illinois courts. 750 ILCS 22/611(a) (West 2012).)

¶ 19    We reject John's argument. Here, both parties resided in Illinois when the Connecticut judgment was enrolled. Melissa's petition sought enrollment of that judgment "in order to modify and/or enforce" it in Illinois. Thereafter, John and Melissa consented to that judgment's enrollment for both modification and enforcement purposes, and an Illinois court entered an agreed order to that effect. Under section 613 of the Family Support Act, if the parties both reside in Illinois and the children no longer reside in the issuing state, Illinois courts have authority "to enforce and to modify the issuing state's child-support order in a proceeding to register that order." 750 ILCS 22/613(a) (West 2012). Thus, when the trial court entered the parties' agreed order enrolling the Connecticut judgment for both enforcement and modification, the requirements of section 613 were met and Illinois courts gained the authority to modify that judgment.

¶ 20    That Melissa did not actually seek modification of the Connecticut judgment until after registration does not matter: section 609 of the Family Support Act, which governs the procedure for enrolling interstate child support orders for enforcement and modification, provides that a petition for modification may be filed either "at the same time as a request for registration, or later." 750 ILCS 22/609 (West 2012). (Indeed, we note that both parties have since petitioned, in Illinois, for the modification of the Connecticut judgment.) Similarly, John's later move out of Illinois did not divest this state's courts of their authority to modify the judgment, which authority was validly established when he was an Illinois resident. See *Trissler v. Trissler*, 987 So. 2d 209, 212 (Fla. Dist. Ct. App. 2008) (where both parents resided in Florida when Pennsylvania child support order was registered there, mother's subsequent move out of state did not affect ability of Florida courts to modify the Pennsylvania child support order). Nor does the record show that, in the time since the Connecticut judgment was enrolled in Illinois, the courts of any state other than Illinois gained authority to modify that judgment. Thus, the record establishes that Illinois courts have continuing exclusive jurisdiction to modify the judgment.

¶ 21    In support of his argument that section 611 is the only provision of the Family Support Act that can grant Illinois courts the authority to modify the Connecticut judgment, John cites *In re Marriage of Vailas*, 406 Ill. App. 3d 32 (2010), in which the court held that the requirements of section 611 governed the issue of whether an Illinois court had jurisdiction to modify a Texas child support order. However, that case is factually distinct. In *Vailas*, the parties were divorced in Texas and the mother and child moved to Illinois while the father remained in Texas. *Id.* at 34. The mother petitioned to enroll the Texas divorce judgment in Illinois without specifying whether she sought enforcement or modification of that judgment. A few months later, the mother filed a petition to modify child support and served the father with the petition while he was in Illinois visiting the child. *Id.* The father moved to dismiss the petition on the basis that the trial court lacked personal jurisdiction over him as well as subject matter jurisdiction. The trial court denied his motion and the father appealed. The reviewing court reversed, finding that, under the express terms of section 201(b) of the Family Support Act (750 ILCS 22/201(b) (West 2008)), Illinois courts could not gain personal jurisdiction over a

nonresident parent for modification purposes, despite personal service within the state, unless the requirements of section 611 were also met. *Vailas*, 406 Ill. App. 3d at 36. Here, unlike in *Vailas*, both parties resided in Illinois when the foreign child support order was enrolled for modification purposes and thus section 613, not section 611, applies. Further, here there is no dispute that the trial court had personal jurisdiction over John, who filed a general appearance in the case while he was still an Illinois resident. Accordingly, *Vailas* is inapposite. The trial court did not err in finding that it had authority to modify the Connecticut judgment.

¶ 22            2. Law Applicable to the Petition for Contribution to College Expenses

¶ 23    We now turn to the issue of the law to be applied to Melissa's petition for contribution to college expenses. This question is answered definitively by sections 611(c) and (d) of the Family Support Act (750 ILCS 22/611(c), (d) (West 2012)). Subsection (c) states that "a tribunal of this State may not modify any aspect of a child-support order that may not be modified under the law of the issuing state, including the duration of the obligation of support." 750 ILCS 22/611(c) (West 2012). Subsection (d) reemphasizes that the law of the issuing state "governs the duration of the obligation of support" and further provides that the obligor's fulfillment of his or her initial duty of support "precludes imposition of a further obligation of support" by the forum state. 750 ILCS 22/611(d) (West 2012). As Connecticut was the issuing state, Connecticut law governs both the availability of the relief Melissa seeks–contribution to college expenses–and the duration of John's child support obligation.

¶ 24    We note that, although the trial court's authority to modify the Connecticut judgment arose from section 613, not section 611, the strictures of sections 611(c) and (d) still apply. Section 613 contains an implicit reference to this fact, stating that a court exercising authority under that section must apply, among other things, "the provisions of *** this Article" in any modification proceeding. 750 ILCS 22/613(b) (West 2012). In addition, the official comments to section 613 of the 1996 version of the Model Act make this fact clear: even where the parties reside in the same state and thus modification of the child support order "is essentially an intrastate matter," the new state must apply the substantive and procedural provisions of article 6 of the Model Act, including sections 611(c) and (d). See Unif. Interstate Family Support Act § 613 (1996), 9 U.L.A. 454 cmt. (2005). For instance, "the provision in Section 611(c) forbidding modification of nonmodifiable aspects of the controlling order applies" to modifications under section 613, as does section 611(d), which provides that "the duration of the support obligation remains fixed despite the subsequent residence of all parties in a new state with a different duration of child support." *Id*.; see generally *Zaabel v. Konetski*, 209 Ill. 2d 127, 135 (2004) (comments to section of the Model Act were "very persuasive evidence" of the Illinois General Assembly's intent in enacting the corresponding section of the Family Support Act, because the legislature had adopted identical wording). Finally, foreign case law on this issue holds that section 611's choice-of-law rules apply even where section 613 governs a court's ability to modify a child support order. See *Freddo v. Freddo*, 983 N.E.2d 1216, 1221 (Mass. App. Ct. 2013); *Hennepin County v. Hill*, 777 N.W.2d 252, 254 (Minn. Ct. App. 2010). Having found that, under section 611(c), Connecticut law governs the issue of whether John's child support obligation may be modified to include college expenses, we turn to a consideration of Connecticut law.

¶ 25    The Supreme Court of Connecticut has held repeatedly that "[t]he obligation of a parent to support a child terminates when the child attains the age of majority, which, in this state, is

eighteen." *Cariseo v. Cariseo*, 459 A.2d 523, 524 (Conn. 1983); see also *Loughlin v. Loughlin*, 910 A.2d 963, 980 (Conn. 2006). Further, "[t]he statutory grant of jurisdiction to the [trial court] in matters relating to child support incident to the dissolution of a marriage *** expressly circumscribes the court's jurisdiction to orders involving only 'minor children.' " *Broaca v. Broaca*, 435 A.2d 1016, 1017 (Conn. 1980). Accordingly, absent some specific statutory exception, Connecticut courts lack jurisdiction to enter a child support obligation extending beyond the age of majority. *Id*.; *Loughlin*, 910 A.2d at 980.

¶ 26       In 2002, the Connecticut legislature enacted Public Act 02-128, 2002 Conn. Acts __ (Reg. Sess.) (codified at Conn. Gen. Stat. § 46b-56 (2002)). This statute, for the first time, permitted Connecticut courts to enter educational support orders requiring parents to provide support for their children's college expenses. However, the statute was tightly restricted in scope, expressly stating that such educational support orders may be entered only "at the time of entry of a decree of dissolution, legal separation or annulment, and no educational support order may be entered thereafter unless the decree explicitly provides that a motion or petition for [such an order] may be filed *** at a subsequent date." Conn. Gen. Stat. § 46b-56c(b)(1) (2002). Further, the statute applies "only in cases when the initial order for parental support of the child is entered on or after October 1, 2002." Conn. Gen. Stat. § 46b-56c(k) (2002). In this case, the parties' judgment of dissolution was entered in May 2002, before the effective date of the statute, and it did not provide for educational support. Thus, under Connecticut law, no court may order the payment of college expenses for the parties' children. Under section 611(c) of the Family Support Act, no Illinois court may order that relief either.

¶ 27       Before we turn aside from our analysis of Connecticut law, we note that, in her opening brief in this appeal, Melissa argued only that Connecticut law did not apply; she made no argument that Connecticut law would allow her to seek contribution to the children's college expenses. In her reply brief, however, Melissa suggests that Connecticut law with respect to parental support for college expenses is "uncertain" because the Connecticut Supreme Court has found that the effective-date restriction established by a similar statute violated equal protection. See *Walsh v. Jodoin*, 925 A.2d 1086, 1097 (Conn. 2007). Melissa forfeited this argument by failing to raise it in her opening brief. See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) (points not argued in the appellant's brief are forfeited and may not be raised in the reply brief). Moreover, even if we were inclined to address this argument, our reading of *Walsh* does not suggest any constitutional infirmity in the Connecticut educational support statute, or any other reason why the plain language of that statute would not control here. In light of that statute, the trial court did not err in concluding that it could not grant Melissa the relief she sought in her petition for contribution to college expenses.

¶ 28              B. Interaction Between Family Support Act and Full Faith and Credit Act

¶ 29       Melissa attacks the trial court's reliance on subsection (h)(2) of the Full Faith and Credit Act to support its application of Connecticut law. We agree that the application of this provision was error. However, our conclusion does not yield the result Melissa seeks here.

¶ 30       Subsection (h) of the Full Faith and Credit Act provides:

         "Choice of law.–

(1) In general.–In a proceeding to establish, modify, or enforce a child support order, the forum State's law shall apply except as provided in paragraphs (2) and (3).

(2) Law of state of issuance of order.–In interpreting a child support order including the duration of current payments and other obligations of support, a court shall apply the law of the State of the court that issued the order.

(3) Period of limitation.–In an action to enforce arrears under a child support order, a court shall apply the statute of limitation of the forum State or the State of the court that issued the order, whichever statute provides the longer period of limitation." 28 U.S.C. § 1738B(h) (2006).

¶ 31 Melissa argues that subsection (h)(1) sets the general rule, which is that the law of the forum state (here, Illinois) should be applied in proceedings to modify an interstate child support order. She contends that the exception established in subsection (h)(2) for issues involving the interpretation of foreign child support orders does not apply here, as the Connecticut judgment does not address the issue at hand (college expenses) at all and thus there are no relevant provisions to interpret. Accordingly, she argues, Illinois law should apply.

¶ 32 Melissa is correct that subsection (h)(1) is the more applicable of the two subsections here, where the proper construction of the Connecticut judgment is not at issue. Thus, Illinois law must be applied. However, Melissa overlooks the fact that the Family Support Act, including section 611(c), *is* part of the law of Illinois. Accordingly, Illinois law in fact requires us to apply the law of the issuing state in determining whether an Illinois court presiding over a child support modification proceeding may grant the relief requested by the petitioner. See 750 ILCS 22/611(c) (West 2012). Thus, even if we follow subsection (h)(1)'s instructions to apply the law of the forum state, *i.e.*, Illinois, that law still leads us back to Connecticut law.

¶ 33 Because of this, the choice-of-law provisions of the Full Faith and Credit Act do not yield a different result than the relevant state law, the Family Support Act. Accordingly, on this point at least,[1] there is no conflict between the two statutes, and thus no cause to look to the federal law. See *Mattmuller v. Mattmuller*, 336 Ill. App. 3d 984, 992 (2003).

¶ 34 Melissa raises no other arguments on appeal relative to the trial court's dismissal of her petition for college expenses. Accordingly, we affirm the trial court's rulings of July 26, 2013 (dismissing that petition), and January 29, 2014 (denying her motion to reconsider).

---

[1]The parties argue about whether the Full Faith and Credit Act, which permits the modification of an interstate child support order when all of the parties and the child(ren) have moved out of the issuing state (see 28 U.S.C. § 1738B(e)(2)(A) (2006)), conflicts with and preempts section 611(a)(1) of the Family Support Act, which imposes the additional requirement that the party seeking modification must not reside in the forum state (see 750 ILCS 22/611(a)(1) (West 2012)). Given our conclusion that the trial court's authority to modify the Connecticut judgment arose under section 613, not section 611, this issue need not be resolved, however. We therefore do not discuss the parties' arguments on this issue, or the case law they cite in support of their positions, including *Pulkkinen v. Pulkkinen*, 127 So. 3d 738 (Fla. Dist. Ct. App. 2013), *Draper v. Burke*, 881 N.E.2d 122 (Mass. 2008), *Burke v. Hutto*, 243 S.W.3d 431 (Mo. Ct. App. 2007), and *LeTellier v. LeTellier*, 40 S.W.3d 490 (Tenn. 2001).

¶ 35         C. Melissa's Petition to Increase Child Support and Set Adult Child Support

¶ 36         The sole remaining issue in this appeal is the correctness of the trial court's order of July 30, 2014, dismissing Melissa's petition to increase child support and set adult child support, "for the reasons stated" in the court's previous orders regarding Melissa's petition for college expenses. The dismissal of the petition on these grounds was error, because the issues of adult child support and an increase in child support are separate from the issue of college expenses, and they require a separate choice-of-law determination. However, as we may uphold the judgment of the trial court on any basis supported by the record, regardless of whether the trial court's reasoning was flawed (*Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 192 (2007)), we consider whether this dismissal should be affirmed.

¶ 37         The amount of child support that an obligor must pay each month is modifiable under Connecticut law. See Conn. Gen. Stat. § 46b-86(a) (2012) (unless the divorce decree states that it is nonmodifiable, the amount of child support is modifiable). Accordingly, section 611(c) of the Family Support Act does not bar such a modification. The trial court clearly erred in dismissing the portion of Melissa's petition that sought to increase the amount of child support based upon additional income received by John.

¶ 38         As for the portion of Melissa's petition that sought to establish adult child support for the parties' older child on the basis of disability, that is another matter. It appears that Connecticut law makes some provision for the establishment of child support for a disabled adult child (see Conn. Gen. Stat. § 46b-84(c) (2012)), although the availability of such support is not clear under the circumstances present here. We do not have the benefit of any argument on this issue, as the parties do not discuss Connecticut law regarding adult child support. Thus, John has not shown that the trial court's dismissal of the request for adult child support may be affirmed on another basis appearing in the record. Accordingly, we reverse the trial court's July 30, 2014, dismissal of Melissa's petition to increase child support and set adult child support, and remand for further proceedings on these issues.

¶ 39                                    III. CONCLUSION

¶ 40         For the foregoing reasons, the orders of the circuit court of Lake County dated July 26, 2013, and January 29, 2014, are affirmed. The dismissal of Melissa's petition seeking to increase child support and establish adult child support, contained in the order dated July 30, 2014, is reversed. The cause is remanded for further proceedings consistent with this opinion.

¶ 41         Affirmed in part and reversed in part; cause remanded.