# Illinois Official Reports

## Appellate Court

***Department of Healthcare & Family Services ex rel. Nieto v. Arevalo,***
**2016 IL App (2d) 150504**

| | |
|---|---|
| Appellate Court Caption | THE DEPARTMENT OF HEALTHCARE AND FAMILY SERVICES *ex rel.* NORA L. NIETO, Petitioner-Appellant, v. ALFREDO R. AREVALO, Respondent-Appellee. |
| District & No. | Second District<br>Docket No. 1-15-0504 |
| Filed | December 19, 2016 |
| Decision Under Review | Appeal from the Circuit Court of McHenry County, No. 14-FA-230; the Hon. Christopher M. Harmon, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Chicago (Carolyn E. Shapiro, Solicitor General, and Paul Racette, Assistant Attorney General, of counsel), for appellant.<br><br>Elizabeth Felt Wakeman and Alex C. Wimmer, of Botto Gilbert Lancaster, P.C., of Crystal Lake, for appellee. |
| Panel | JUSTICE ZENOFF delivered the judgment of the court, with opinion.<br>Justice McLaren concurred in the judgment and opinion.<br>Justice Schostok dissented, with opinion. |

# OPINION

¶ 1      Petitioner, the Illinois Department of Healthcare and Family Services (Department), filed a petition in the circuit court of McHenry County to establish a support order pursuant to the Uniform Interstate Family Support Act (UIFSA) (750 ILCS 22/100 *et seq.* (West 2014)). The trial court dismissed the action for lack of jurisdiction, and the Department appealed. Initially, we affirmed the judgment of the trial court, with Justice Schostok dissenting. The Department filed a petition for rehearing, and we ordered respondent, Alfredo R. Arevalo, to file a response. On November 22, 2016, we granted the petition for rehearing. We again affirm the trial court's judgment.

¶ 2      I. BACKGROUND

¶ 3      On August 18, 2014, the Department filed a "uniform support petition" on behalf of Nora L. Nieto, a resident of Mexico, alleging that respondent, a resident of Crystal Lake, Illinois, owed support for their two minor children, Navid and Jukari, also residents of Mexico.

¶ 4      The form petition, titled "Uniform Support Petition," and the appended documents are in Spanish with English translations. Documentation accompanying the petition shows that Nora and respondent were married in Mexico on October 3, 1996. The children's birth certificates are included in the documentation and indicate that respondent is Navid and Jukari's father. In addition, Nora furnished an "affidavit in support of paternity." The petition also alleged that there was no existing support order in place and that respondent had not paid any support.

¶ 5      Respondent was personally served with process on August 28, 2014, and he filed an appearance on October 3, 2014. Pursuant to court order, respondent filed a financial affidavit prescribed by local rule. In the affidavit, he listed Navid and Jukari as his children with Nora.

¶ 6      On January 14, 2015, respondent filed a "two-count" motion to dismiss. "Count I" was brought pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2014)) and attacked the petition on three grounds: (1) the petition failed to specify the statutory section upon which it was based, in violation of a local rule; (2) Nora's financial affidavit was outdated, in violation of a local rule; and (3) no petition for dissolution of marriage was pending and, therefore, under section 505(a) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/505(a) (West 2014)), no child support could be set. "Count II" was brought pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2014)) and alleged the identical grounds for dismissal that were alleged in "count I."

¶ 7      In its response to the motion, the Department argued that respondent was the noncustodial parent and owed child support; the form petition used was prescribed by statute and federal regulations and specified the relief sought; Nora would shortly be filing an updated financial affidavit; and the Marriage Act was irrelevant, as the UIFSA did not require that a dissolution action be pending or that the parties be divorced.

¶ 8      In reply, respondent contended that there was no Mexican court order to be enforced in Illinois; the UIFSA was not the sole remedy; and the Illinois Public Aid Code (305 ILCS 5/10-1 (West 2014)) governed the issue of whether Nora could receive "child support services" from the State of Illinois.

¶ 9    On March 6, 2015, the Department filed Nora's updated financial affidavit in compliance with the local rule. Nora also alleged that respondent was currently living with a woman in Crystal Lake, with whom he had two sons.

¶ 10    At a hearing on respondent's motion to dismiss on March 6, 2015, the court *sua sponte* ordered the parties to comment on "whether entering a child support order in this case would result in a *de facto* custody order pursuant to 750 ILCS 45/14(a)(2)[1] and whether this court would have jurisdiction [under the UIFSA[2]] to enter such an order." The court's order was premised on its belief that any support order would have to be entered pursuant to section 14(a)(2) of the Illinois Parentage Act of 1984 (750 ILCS 45/14(a)(2) (West 2014)). Only the Department filed a memorandum in accordance with the court's order, in which it argued that the UIFSA allows a court to enter a support order when no previous order has been entered and that such an order does not result in a custody determination.

¶ 11    The court conducted a second hearing on April 10, 2015. Respondent argued that a support order would require a custody determination, which was beyond the court's jurisdiction. The Department argued the points it raised in its written memorandum. In its ruling, the court observed that the Department was seeking an initial order of support on behalf of a resident of Mexico. The court opined that it would have to make a paternity determination as a prerequisite to ordering support. The court further opined that the presumption of paternity arising from the fact that Nora and respondent were married when the children were born was "only a presumption" and that the court "would still be required to determine paternity" before it could award Nora support. In the court's view, a support order would result in a *de facto* custody determination, which, according to the UIFSA, the court had no jurisdiction to make. Consequently, the court dismissed the petition. The Department filed a timely appeal.

¶ 12                                        II. ANALYSIS

¶ 13    The Department contends that the trial court's only obligation was to review the financial information and set child support using the appropriate Illinois guidelines. The Department argues that the court erred in *sua sponte* exploring issues of paternity and custody that were not in dispute. Respondent contends that the court correctly relied on the Parentage Act of 1984 (750 ILCS 45/14(a)(2) (West 2014)) in dismissing the petition. These issues involve the interpretation of the UIFSA, and our review is *de novo*. See *Collins v. Department of Health & Family Services ex rel. Paczek*, 2014 IL App (2d) 130536, ¶ 15 (statutory interpretation is reviewed *de novo*).

¶ 14    While this appeal was pending, the legislature revised the UIFSA (Pub. Act 99-119 (eff. Jan. 1, 2016) (amending 750 ILCS 22/100 *et seq.* (West 2014)) and the Marriage Act (Pub. Act 99-90 (eff. Jan. 1, 2016) (amending 750 ILCS 5/101 *et seq.* (West 2014)). The legislature also repealed the Illinois Parentage Act of 1984 (750 ILCS 45/1 *et seq.* (West 2014)), replacing it

---

[1]This statutory reference is to section 14(a)(2) of the Illinois Parentage Act of 1984 (750 ILCS 45/14(a)(2) (West 2014)), which provided that, if a judgment of parentage contains no explicit award of custody, the establishment of a support obligation in one parent shall be considered a judgment granting custody to the other parent.

[2]Section 104(b)(2) of the UIFSA (750 ILCS 22/104(b)(2) (West 2014)) provided that the court lacks "jurisdiction" to render a judgment relating to child custody. As we discuss later in this opinion, the reference is to subject matter jurisdiction. *Infra* ¶ 21.

with the Illinois Parentage Act of 2015 (Parentage Act) (Pub. Act 99-85 (eff. Jan. 1, 2016) (adding 750 ILCS 46/101 *et seq.*). With the exception of the changes to the Marriage Act, we must decide this case under the law as it now exists,[3] unless the present law affects the parties' vested rights. *McGinley v. Madigan*, 366 Ill. App. 3d 974, 981 (2006). Nevertheless, these changes have not affected the issues advanced in this appeal. If there is no retroactive impact, the amended law may be applied. *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 38 (2001).

¶ 15        The primary objective of statutory construction is to give effect to the intent of the legislature. *Collins*, 2014 IL App (2d) 130536, ¶ 15. The plain language of the statute is the best indicator of the legislature's intent. *In re Christopher K.*, 217 Ill. 2d 348, 364 (2005). The court will examine the statute as a whole, considering all of its relevant parts. *Christopher K.*, 217 Ill. 2d at 364. Where the statute's language is clear and unambiguous, we do not resort to extrinsic construction aids. *Christopher K.*, 217 Ill. 2d at 364.

¶ 16        The purpose of the UIFSA is to unify state laws governing the establishment, enforcement, and modification of support orders. *Gowdey v. Gowdey*, 825 So. 2d 67, 69 (Miss. Ct. App. 2002). Section 401(a)(1) of the UIFSA provides that an Illinois court with personal jurisdiction over the parties may issue a support order when the individual seeking the order resides "outside this State." Pub. Act 99-119 (eff. Jan. 1, 2016) (amending 750 ILCS 22/401(a)(1) (West 2014)). "Outside this State" means "a location in another state or a country other than the United States." Pub. Act 99-119 (eff. Jan. 1, 2016) (amending 750 ILCS 22/102(18) (West 2014)). Section 401(c) provides that the court shall issue a support order after finding that the obligor owes a duty of support. Pub. Act 99-119 (eff. Jan. 1, 2016) (amending 750 ILCS 22/401(c) (West 2014)).

¶ 17        An individual "petitioner" may initiate a proceeding under the UIFSA by filing a petition in a tribunal that has or can obtain personal jurisdiction over the respondent. Pub. Act 99-119 (eff. Jan. 1, 2016) (amending 750 ILCS 22/301(b) (West 2014)). The forum court, known as the "responding tribunal" (Pub. Act 99-119 (eff. Jan. 1, 2016) (amending 750 ILCS 22/102 (West 2014)), to the extent not prohibited by other law, may establish a support order. Pub. Act 99-119 (eff. Jan. 1, 2016) (amending 750 ILCS 22/305(b)(1) (West 2014)). In determining whether a duty of support exists, the forum court shall apply the procedural and substantive law of the forum state. 750 ILCS 22/303(1) (West 2014).[4] The UIFSA does not grant the court authority to render a judgment relating to child custody. Pub. Act 99-119 (eff. Jan. 1, 2016) (amending 750 ILCS 22/104(b)(2) (West 2014)).

¶ 18        Section 303(1) of the UIFSA provides that the court "shall" apply the procedural and substantive law "generally applicable to similar proceedings originating in this State and may exercise all powers and provide all remedies available in those proceedings." 750 ILCS 22/303(1) (West 2014). Section 303(2) requires the court to "determine the duty of support and the amount payable in accordance with the law and support guidelines of this State." 750 ILCS 22/303(2) (West 2014). Section 305(b)(1) provides that the court, "to the extent not prohibited

---

[3]Pursuant to section 801(d) of the Marriage Act (750 ILCS 5/801(d) (West 2014)), we apply the law in effect at the time of the order giving rise to the appeal. *In re Marriage of Smith*, 162 Ill. App. 3d 792, 795-96 (1987) (purpose of section 801(d) is to allow the correction on appeal or in a new trial of errors made in applying the law in effect at the time of the original hearing).

[4]The 2015 revision did not amend section 303.

by other law," may, *inter alia*, establish a support order. Pub. Act 99-119 (eff. Jan. 1, 2016) (amending 750 ILCS 22/305(b)(1) (West 2014)).

¶ 19    At oral argument, we asked the parties to expound on the meaning of section 303 of the UIFSA. The Department responded that it was unprepared to do so but that it would be willing to address the question in supplemental briefing. Consequently, we ordered supplemental briefing. The Department contended that section 303 was not addressed by the trial court and that we cannot address it *sua sponte*. We find this response remarkable. The trial court perforce applied section 303 when it looked to Illinois's substantive law for a duty of support. Furthermore, respondent's motion to dismiss challenged the applicability of the UIFSA. The Department should not be surprised that the construction of the UIFSA is at the heart of this appeal.

¶ 20    Next, the Department asserted that we need address only whether the court had jurisdiction. Presumably, because the court dismissed Nora's petition for lack of "jurisdiction," the Department believes that this is the sole issue in this appeal. To the contrary, it is but a threshold issue on which we clarify that the court had subject matter and personal jurisdiction.

¶ 21    The trial court determined that it lacked jurisdiction, because section 104(b)(2) of the UIFSA states that the court is without "jurisdiction" to render a judgment relating to child custody. Pub. Act 99-119 (eff. Jan. 1, 2016) (amending 750 ILCS 22/104(b)(2) (West 2014)). As used in section 104(b)(2), "jurisdiction" means subject matter jurisdiction. Subject matter jurisdiction is conferred entirely by the Illinois Constitution, and it refers to the power of a court to hear and decide cases of the general class to which the proceeding at issue belongs. *McCormick v. Robertson*, 2015 IL 118230, ¶ 19. There is no question that circuit courts of this state have the power to hear and determine issues pertaining to the UIFSA. Thus, the trial court in the present case possessed subject matter jurisdiction. There also is no question that respondent was served with process and filed an appearance, conferring personal jurisdiction on the court.

¶ 22    What the trial court lacks under the UIFSA is *authority* to decide issues relating to child custody. See *In re Marriage of Edelman*, 2015 IL App (2d) 140847, ¶ 17 (discussing the difference between subject matter jurisdiction and authority to act under the UIFSA).

¶ 23    Having determined that the trial court had jurisdiction, we turn to the issue of whether the court correctly ruled that a duty of support must be found in Illinois's substantive and procedural law. In our view, because the UIFSA does not affect substantive rights, the trial court properly looked to Illinois statutory law to determine whether respondent owes a duty of support. *Department of Human Services v. Shelnut*, 772 So. 2d 1041, 1050 (Miss. 2000). Contrary to the Department's position, the UIFSA does not itself create a duty of support. *Gowdey*, 825 So. 2d at 69.[5]

¶ 24    A fundamental principle of statutory construction is to view all provisions of a statute as a whole, interpreting words and phrases in light of other relevant statutory provisions. *Edelman*, 2015 IL App (2d) 140847, ¶ 13. In violation of this principle, the Department asks us to apply section 401(a)(1) of the UIFSA in isolation. Section 401(a)(1) provides that a court of this state "may" issue a support order if the individual seeking the order resides outside this state. Pub.

---

[5]This court has not found an Illinois case on point. Consequently, we look to other states' decisions for guidance.

Act 99-119 (eff. Jan. 1, 2016) (amending 750 ILCS 22/401(a)(1) (West 2014)). The Department ignores subsection (c) of section 401, which provides that the court shall issue a support order *only after* it finds that an obligor owes a duty of support. Pub. Act 99-119 (eff. Jan. 1, 2016) (amending 750 ILCS 22/401(c) (West 2014)). We thus must look to section 303 for instruction on how to determine whether a duty of support exists. Section 303 provides that courts determine whether a duty of support exists by applying the substantive and procedural law of the forum state. 750 ILCS 22/303 (West 2014).

¶ 25 The Department suggests that parents' common-law duty to support their children furnishes the duty of support under the UIFSA. Under the common law and prior to support provisions in the earliest divorce statutes, circuit courts had the power to order the father to pay child support. *Eckiss v. McVaigh*, 261 Ill. App. 3d 778, 783 (1994). Women, postemancipation, were also held legally responsible for the support of their children, equally with their husbands. *Eckiss*, 261 Ill. App. 3d at 785. In *Eckiss*, the court held that the parents of a child who had been removed from their custody owed a common-law duty to support the child, including the payment of support to the child's court-appointed guardians. *Eckiss*, 261 Ill. App. 3d at 785. The court observed that no Illinois statute relieves parents of their common-law duty to support their children. *Eckiss*, 261 Ill. App. 3d at 785.

¶ 26 While there may be no statute that affirmatively states that the common-law duty of support has been abolished, our legislature has abolished common-law marriage. 750 ILCS 5/214 (West 2014). With the abolition of common-law marriage, it follows that the legislature intended marriage and ancillary issues, such as child support, to be wholly regulated by statute. Indeed, where our supreme court has extended a common-law duty of support in the absence of statutory authority, it has done so with extreme circumspection.

¶ 27 In *In re Parentage of M.J.*, 203 Ill. 2d 526, 541 (2003), our supreme court held that the Illinois Parentage Act (750 ILCS 40/1 *et seq.* (West 1998)), specifically governing artificial insemination, does not preclude child-support claims based on common-law theories of oral contract and promissory estoppel in artificial-insemination cases. The court emphasized that its holding was "limited to the unique circumstances" of that case. *M.J.*, 203 Ill. 2d at 542; see also *In re Marriage of Simmons*, 355 Ill. App. 3d 942, 952 (2005) (*M.J.* held that action for support in artificial-insemination cases can be brought under common-law theories of breach of contract and promissory estoppel). The court in *In re T.P.S.*, 2012 IL App (5th) 120176, ¶ 49, also recognized that the holding in *M.J.* was limited to artificial-insemination cases. Therefore, the Department's assertion that *M.J.* and *Simmons* stand for the proposition that there is a blanket common-law action for child support is erroneous. Moreover, to recognize a common-law cause of action for child support risks opening the floodgates to multitudinous lawsuits between married spouses. What of the husband who gambles or drinks? Can his wife sue him for increased support? What of the miserly husband or wife? Can the offended spouse sue his or her mate to loosen the purse strings? What if a couple cannot agree on budget priorities? Is public school a deprivation where the family can afford private school? We can envision countless scenarios leading to frivolous lawsuits. Consequently, if there is a duty of support in this case, it must be found in one or more statutes.

¶ 28 We first consider whether the Marriage Act can furnish a duty of support. Nora and respondent are married. Under Illinois law, none of the conditions exist that would trigger a duty of support under section 505(a) of the Marriage Act. 750 ILCS 5/505(a) (West 2014). The Marriage Act authorizes support only where there is a pending proceeding for dissolution of

marriage or for legal separation; a proceeding for child support following dissolution of the marriage by a court that lacked personal jurisdiction over an absent spouse; a proceeding for modification of a previous order for child support under section 510 of the Marriage Act; or any proceeding authorized under section 501 (temporary relief) or 601 (custody proceeding) of the Marriage Act. Consequently, if respondent owes a duty to support Navid and Jukari, the duty must be found elsewhere.

¶ 29    The Department contends that a duty of support exists under the Illinois Public Aid Code (305 ILCS 5/10-1 *et seq.* (West 2014)). The purpose of the Public Aid Code is to "assist in the alleviation and prevention of poverty and thereby to protect and promote the health and welfare of all the people of this State." 305 ILCS 5/1-1 (West 2014). The statute empowers the Department to provide child support enforcement services on behalf of aid recipients and nonrecipients alike. *In re Marriage of Lappe*, 176 Ill. 2d 414, 432-33 (1997). One purpose of allowing the Department to enforce child support on behalf of nonrecipients is to reduce welfare costs by preventing families from becoming dependent on public aid as a result of unpaid child support. *Lappe*, 176 Ill. 2d at 433. In *People ex rel. Browning v. Melton*, 180 Ill. App. 3d 519, 522 (1989), the court declared that the Public Aid Code announces "a firm policy that parents are to support their children."

¶ 30    Respondent does not question the above premise, but he argues that a custody order must precede an order of support. Section 10-1 of the Public Aid Code provides that the Department enforces child support on behalf of a spouse or a parent or another person having "custody" of a child. 305 ILCS 5/10-1 (West 2014). "Custody" is a term of art, and a person has "custody" only if he or she provides the care, control, and maintenance of a child pursuant to a court order. *Portman v. Department of Human Services*, 393 Ill. App. 3d 1084, 1090 (2009) (interpreting the definition of "custodial parent" as used in the department's regulations promulgated pursuant to its rulemaking authority under the Public Aid Code). Consequently, we reject the Department's argument that respondent's "admission" that he is the *non*custodial parent establishes that Nora is the custodial parent.[6] It is undisputed that Nora does not have custody pursuant to a court order.

¶ 31    Next, we address the Department's contention that the Parentage Act can be the source of a duty of support. The purpose of the Parentage Act is to provide a statutory mechanism that legally establishes parent and child relationships in Illinois. *Galvez v. Rentas*, 403 Ill. App. 3d 491, 494 (2010). Every child has equal rights regardless of the parents' legal relationship. Pub. Act 99-85 (eff. Jan. 1, 2016) (adding 750 ILCS 46/202). Thus, the fact that Nora and respondent are married is not an impediment to proceeding under the Parentage Act. Pursuant to the Parentage Act, every child also has a right to the physical, mental, emotional, and financial support of his or her parents. Pub. Act 99-85 (eff. Jan. 1, 2016) (adding 750 ILCS 46/102). Section 305(b)(1) of the UIFSA allows the court, to the extent not prohibited by other

_____

[6]The use of the term "admission" in this context is ill advised. Formal admissions in *pleadings* have the effect of withdrawing a fact from issue and dispensing wholly with the need to prove the fact. *El Rincon Supportive Services Organization, Inc. v. First Nonprofit Mutual Insurance Co.*, 346 Ill. App. 3d 96, 100 (2005). Here, respondent was replying to an argument made by the Department in its response to the motion to dismiss. *Motions* are not pleadings. *In re Marriage of Wolff*, 355 Ill. App. 3d 403, 407 (2005). Therefore, there was no need for respondent to admit or deny the arguments set forth in numbered paragraphs in the Department's response. The "admissions" and "denials" simply had no legal effect. For this reason, we also take issue with the dissent's use of the term. *Infra* ¶ 55.

law, to determine parentage. Pub. Act 99-119 (eff. Jan. 1, 2016) (amending 750 ILCS 22/305(b)(1) (West 2014)).

¶ 32 Section 802(a) of the Parentage Act provides that the court "shall issue" an order adjudicating parentage. Pub. Act 99-85 (eff. Jan. 1, 2016) (adding 750 ILCS 46/802(a)). Section 802(c) provides that, if a judgment of parentage contains no explicit award of custody, the establishment of a child support obligation in one parent "shall be" considered a judgment granting custody to the other parent.[7] Pub. Act 99-85 (eff. Jan. 1, 2016) (adding 750 ILCS 46/802(c)). Thus, the plain language of the Parentage Act makes clear that (1) the court must enter a parentage order before making a child support award and (2) a child support award automatically renders a judgment relating to child custody. Because the UIFSA does not allow the court to make a custody determination, the trial court found that the Parentage Act did not furnish a duty of support.

¶ 33 The Department asserts that the court erred, because (1) a parentage order is not required, and (2) a child support award would not constitute a custody determination. The Department maintains that respondent's admission that he is the children's natural father dispensed with the necessity of a parentage judgment. We disagree. A parent-child relationship can exist as a natural fact, but this is insufficient to establish a legal relationship. *Alexander v. Samuels*, 58 P.2d 878, 881 (Okla. 1936). The establishment of the legal relationship is necessary, because the "entry of a paternity order and determination of child support are the two basic orders needed to complete a paternity action." *Baldassone v. Gorzelanczyk*, 282 Ill. App. 3d 330, 333 (1996). Thus, the Parentage Act sets forth a two-step process, the first of which is a parentage determination. *J.S.A. v. M.H.*, 384 Ill. App. 3d 998, 1011 (2008).

¶ 34 The Department suggests that parentage can be established without a court order, where, as here, there is a statutory presumption of paternity. Under section 204(a)(1) of the Parentage Act, a husband is presumed to be a child's parent if the child is born to the wife during the marriage. Pub. Act 99-85 (eff. Jan. 1, 2016) (adding 750 ILCS 46/204(a)(1)). The presumption is rebuttable. *People ex rel. Hughes v. Walker*, 278 Ill. App. 3d 116, 119 (1996). Also, a presumption is not evidence itself, but rather a legal conclusion drawn from proven facts. *Sheldon v. Brandstetter*, 325 Ill. App. 595, 599 (1945). Even if the presumption is not rebutted, it simply takes the place of facts. *Sheldon*, 325 Ill. App. at 599. Thus, the presumption that respondent is the children's father, if unrebutted, would allow the court to find that a legal father-child relationship exists. However, the court would still have to make that finding.

¶ 35 This brings us full circle to the proposition in the Parentage Act that a support order pursuant to a parentage judgment necessarily renders a custody judgment. Pub. Act 99-85 (eff. Jan. 1, 2016) (adding 750 ILCS 46/802(c)). The problem, explained above, is that the UIFSA does not authorize the court to make a custody determination. Pub. Act 99-119 (eff. Jan. 1, 2016) (adding 750 ILCS 22/104(b)(2)). Thus, section 802(c) precludes the court from entering a support order.

¶ 36 The Department contends that we cannot apply section 802(c) to the present situation, where the children reside in another jurisdiction. The Department maintains that the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA) (750 ILCS 36/101 *et seq.* (West 2014)) effectively removes section 802(c) from our consideration. The UCCJEA governs

---

[7]Section 802(c) is identical to section 14(a)(2) of the Illinois Parentage Act of 1984, under which the trial court made its ruling.

- 8 -

actions involving custody and visitation, whereas the UIFSA addresses claims for child support and paternity. *Friedetzky v. Hsia*, 117 A.3d 660, 667 (Md. Ct. Spec. App. 2015). A child-custody determination must be made in the child's home state. *Fleckles v. Diamond*, 2015 IL App (2d) 141229, ¶ 50. In the present case, Illinois cannot make a custody determination under the UCCJEA, because the children's "home state" is Mexico. 750 ILCS 36/201 (West 2014); see also 750 ILCS 36/102(7) (West 2014). From this, the Department concludes that "[b]ecause [the] UCCJEA specifically applies regarding custody and visitation matters when the children live in other jurisdictions, *** a support order issued under the Parentage Act could not conceivably result in the implicit issuance of a custody order."

¶ 37 The Department raised this argument for the first time in the petition for rehearing.[8] Arguments not raised until the petition for rehearing are forfeited. Illinois Supreme Court Rule 341(h)(7) (eff. Jan. 1, 2016); *A.J. Maggio Co. v. Willis*, 316 Ill. App. 3d 1043, 1048 (2000). Forfeiture aside, we cannot read section 802(c) out of the Parentage Act. Courts cannot rewrite a statute by reading into it exceptions, limitations, or conditions that are not expressed by the legislature. *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2014 IL App (1st) 132011, ¶ 35. For this reason, we respectfully disagree with the dissent's discussion of section 802(c). *Infra* ¶¶ 75-77. In attempting to harmonize the UIFSA with the Parentage Act, the dissent effectively reads section 802(c) out of the statute and ignores the Department's argument on appeal that the Parentage Act can be a basis for a support order.

¶ 38 The Department asserts further that construing the Parentage Act as we do renders the UIFSA "toothless." According to the Department, it is in the interests of both Illinois and Mexico to assist custodial parents in collecting child support from noncustodial parents. We do not question the premise of that statement, but the Department has not demonstrated that Nora is legally entitled to child support under the facts of this case.

¶ 39 The facts of this case are simple. The legal resolution is less so. However, there are two key points: (1) the UIFSA requires the court to look to state law to determine whether a duty of support exists, and (2) the applicable state law requires a threshold determination of custody before the court can enter a child support order. As discussed, the UCCJEA governs the issue of custody, as Navid and Jukari's home state is Mexico. Once Nora obtains a custody order in Mexico, she (or the Department on her behalf) can then proceed in Illinois by filing a new petition under the UIFSA to obtain a child support order.

¶ 40 To make our holding crystal clear, we summarize it as follows. The UIFSA does not create a duty of support. Section 303 of the UIFSA requires courts to look to the procedural and substantive law of the forum state to determine whether the respondent owes a duty of support. In considering Illinois's procedural and substantive law, the trial court properly looked to state statutes, because there is no blanket common-law duty of support. The Marriage Act does not create a duty of support in the present case, because no dissolution or legal separation proceeding is pending. The Parentage Act does not apply at this juncture, because a parentage determination would involve a custody judgment, which is prohibited by the UIFSA. Similarly, at this juncture, there is no duty of support under the Public Aid Code, because Nora does not have a custody order. We also wish to be clear that nothing in this opinion infringes on the Department's responsibilities to operate a child support enforcement program in

---

[8]Although the Department mentioned the UCCJEA in its supplemental brief, it did not make the argument that it now raises.

compliance with Title IV-D (42 U.S.C. § 602(a) (2012)) (see *Lappe*, 176 Ill. 2d at 426). We reiterate that the Department's efforts failed in the instant case because it did not comply with the requirements of the UIFSA as set forth herein.

¶ 41                                    III. CONCLUSION

¶ 42        For the foregoing reasons, we affirm the judgment of the circuit court of McHenry County.

¶ 43        Affirmed.

¶ 44        JUSTICE SCHOSTOK, dissenting.

¶ 45        In this opinion, issued following our grant of rehearing, the majority now recognizes the statutory duty of support embodied in the Public Aid Code but declines to enforce it, holding that the duty of a father to support his children may be ignored if the parents have not previously obtained a court order regarding custody. The majority reads into the Public Aid Code a new requirement that is contrary to the plain language and intent of that enactment and that lacks any support in the law of this state. The majority also accepts the trial court's flawed belief that entering a child support order under the UIFSA is impossible because it would necessarily result in the entry of a *de facto* award of custody under section 802(c) of the Parentage Act. I disagree with both of these propositions, and I respectfully dissent.

¶ 46        Contrary to the majority's assertion (*supra* ¶ 23), the issue presented in this appeal is whether the trial court erred in dismissing the Department's child support petition for lack of "jurisdiction." As the majority concedes (*supra* ¶ 21), the answer to this question is clearly yes. The trial court unquestionably had subject matter jurisdiction to entertain the Department's petition for child support, as well as personal jurisdiction over Alfredo. Instead, the trial court's comments relating to the dismissal indicate that it incorrectly believed that it lacked the authority to grant the relief sought by the Department. (The trial court thought that it could not grant the child support order sought by the Department, because doing so would result in an implicit award of legal custody to Nora under section 802(c) of the Parentage Act, and that would conflict with section 104(b)(2) of the UIFSA.) Thus, we can ignore the court's mischaracterization of the issue as "jurisdictional." However, the issue on appeal remains whether the dismissal was correct.

¶ 47        On appeal, Alfredo raised two arguments: that the trial court's understanding of the interaction between section 802(c) and the UIFSA was correct, and that, even if it were not, the dismissal should be upheld because Alfredo had no legal duty to support his children with Nora, given that the parties remained married and Nora was not receiving public aid. Upon rehearing, the majority now rejects this latter argument, recognizing that Alfredo owes a duty to support his children under the Public Aid Code regardless of the parties' marital status and that child support services under that code are not limited to public aid recipients. However, the majority ultimately concludes that the trial court still may not entertain the Department's petition, because (1) there is no prior court order granting Nora custody and (2) Alfredo's interpretation of the effect of section 802(c) is correct. Respectfully, I believe that both of these conclusions are mistaken.

¶ 49 As the majority correctly notes, the UIFSA permits the entry of an initial child support order, not just the registration and enforcement of preexisting child support orders. Under section 401 of the UIFSA, an Illinois court must enter a child support order "[u]pon [a] finding, after notice and opportunity to be heard, that a respondent owes a duty of support." 750 ILCS 22/401(c) (West 2014). The majority recognizes that the Public Aid Code imposes such a duty of support upon all parents. See *supra* ¶ 29. However, it then refuses to allow the Department to enforce this duty against Alfredo, citing a wholly new requirement that there must be a prior custody order. I cannot agree with the imposition of this requirement, which is at odds with both the plain language and the spirit of the Public Aid Code.

¶ 50 The majority states that, under section 10-1 of the Public Aid Code, the Department may seek child support only on behalf of custodial parents. See *supra* ¶ 30. This supposed requirement is an invention of the majority. Although section 10-1 refers to "custody" at one point, in several other places the language supports the conclusion that the Department may seek child support from any parent or other "responsible person" regardless of whether that person has physical or legal custody of the children. Compare the fourth paragraph of section 10-1 (305 ILCS 5/10-1 (West 2014)), which contains the only mention of custody ("By accepting financial aid under this Code, a spouse or a parent or other person having custody of a child shall be deemed to have made assignment to the Illinois Department for aid [received by that person]."), with the first, second, and third paragraphs (*id.*), which do not mention custodial status (first paragraph: parents' duty to support their children "applies whether the family unit of parents and children or of husband and wife remains intact and resides in a common household or whether the unit has been broken by absence of one or more members of the unit. The obligation of the family unit is particularly applicable when a member is in necessitous circumstances and lacks the means of a livelihood compatible with health and well-being"; second paragraph: "It is the purpose of this Article to provide for locating an absent parent or spouse, for determining his financial circumstances, and for enforcing his legal obligation of support"; and third paragraph: child support enforcement services "shall be furnished [to] dependents of an absent parent or spouse"). Courts may not depart from the plain language of a statute by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent. *In re Michael D.*, 2015 IL 119178, ¶ 9. A fair reading of *all* of section 10-1 supports the conclusion that the Department's ability to pursue child support does not depend on which parent has custody.

¶ 51 Further, our supreme court recently made clear that there is no bar to imposing child support obligations on custodial parents. *In re Marriage of Turk*, 2014 IL 116730, ¶ 17 ("Illinois law does not confine the obligation to pay child support to noncustodial parents."). Although *Turk* involved the application of section 505 of the Marriage Act, the supreme court noted that, prior to that statute's enactment, courts had found that custody was not determinative of whether a parent could receive child support. See *id.* ¶ 26 ("That custodial parents may be required to pay child support to noncustodial parents where circumstances warrant it has long been recognized by [Illinois] courts."); *id.* ¶¶ 26-28 (discussing Illinois cases); *id.* ¶¶ 29-30 (discussing other states' case law reaching same conclusion).

¶ 52 Even if some type of custody were a prerequisite to the Department's ability to seek child support on behalf of a parent, however, there is simply no basis for the majority's assertions that (a) "custody" as used in section 10-1 of the Public Aid Code means legal custody rather

than physical custody, and (b) this supposed requirement of custody can be met only where a prior custody order has been entered. This reading of the single word "custody" is contrary to the liberal spirit of section 10-1, which states expressly that it has the broad purpose of "locating an absent parent or spouse, *** determining his financial circumstances, and *** enforcing his legal obligation of support." 305 ILCS 5/10-1 (West 2014). Indeed, section 10-1 makes clear that the duty of parents to support their children extends even to parents in intact marriages, where the parties may well never have obtained any formal court orders regarding their internal allocation of parenting time. The majority's imposition of the requirement of a prior custody order before the Department may seek child support on behalf of a child is contrary to both the plain language and the spirit of section 10-1 when read as a whole.

¶ 53        The majority cites *Portman* as support for its decision to require a prior custody order, but that case actually holds that the existence of a court order awarding custody is not dispositive. Indeed, in *Portman* this court ruled that, in providing its services, the Department could prefer a parent with primary physical custody of the children over a parent with equal court-ordered legal custody. *Portman*, 393 Ill. App. 3d at 1091.

¶ 54        In that case, the parents shared joint legal custody pursuant to a judgment of dissolution. Thus, under the judgment of dissolution, the father met the requirement that the majority would impose here—custody pursuant to a court order. The father requested child care assistance from the Department. The Department denied the request on the ground that it provided such services only to a child's "custodial parent," and under its regulations, this meant only the parent designated as the primary residential parent of the child. Although under the judgment the father shared equal parenting time with the mother, the judgment also identified the mother as the children's "primarily residential parent," and the Department contended that it was obliged to provide services only to her. We upheld the Department's denial of assistance on the ground that the regulations' reference to "custodial parent" was ambiguous. Although a parent who shares joint legal custody could "be considered a 'custodial parent' if the term is understood to mean a parent who provides care, control, and maintenance of a child, pursuant to a court order," the fact that the phrase "custodial parent" was singular raised a contrary possibility that the term should apply only to one parent, the primary residential parent. *Id.* at 1090-91. We therefore deferred to the Department's interpretation of its regulations, despite the fact that the father did have a prior court order designating him as a legal custodian of his children. *Portman* thus does not support the proposition that the word "custody," as used in section 10-1 of the Public Aid Code, means a formal award of custody contained in a court order.

¶ 55        It is undisputed that Alfredo is the father of the children for whom support is sought. Further, Alfredo has never contested that Nora has physical custody of their children, providing them with shelter, food, clothing, affection, and other necessities on a daily basis. In a brief filed in the trial court, Alfredo stated that he admitted the truth of the following statements: "Alfredo Arevalo is the non custodial parent in this case, and he does not live with Nora Nieto or their children, who all reside in Mexico. He is the presumed father of the two children *** who were both born during the parties' marriage. *** Alfredo Arevalo is a legally responsible relative, as defined in the Illinois Public Aid code, and Nora Nieto is in need of support from him for their two children." On appeal, Alfredo stated in his opening brief that Nora lived in Mexico "with their two children." In light of these unequivocal admissions, I am

at a loss as to why the majority seeks further evidence on this subject, much less a court order of custody that Nora might or might not be able to obtain from a Mexican court.

¶ 56 Tellingly, the majority refuses to even acknowledge these statements by Alfredo, omitting them entirely from its recitation of the factual background. (The majority's brief reference to Alfredo's statements (*supra* ¶ 30) thus lacks any context, confusing the reader as to what statements are under discussion.) The majority also argues that Alfredo's statements should not be construed as conclusive, binding judicial admissions, because they were not made in a formal pleading. *Supra* ¶ 32 n.7. I would argue otherwise—"judicial admissions" are "deliberate, clear, unequivocal statements by a party about a concrete fact within that party's knowledge" (*In re Estate of Rennick*, 181 Ill. 2d 395, 406 (1998)), and Alfredo's statements certainly meet this definition. Further, judicial admissions need not be made through formal pleadings, but may include admissions made through other means. *Kovac v. Barron*, 2014 IL App (2d) 121100, ¶ 60. Moreover, regardless of whether they are conclusive of the issue or only probative, there is no doubt that Alfredo's statements are substantive evidence. *Estate of Rennick*, 181 Ill. 2d at 406. There is simply no legal basis for the majority's determination to ignore those statements.

¶ 57 Finally, I would note that, under the 2015 rewriting of the Marriage Act and Parentage Act, the term "custody" has almost vanished from those statutes. See P. André Katz & Erin B. Bodendorfer, *The New and Improved Illinois Marriage and Dissolution of Marriage Act*, 103 Ill. B.J. 30, 34 (2015) (under the 2015 rewriting of the Marriage Act, "[c]ourts will no longer award 'custody' or 'visitation' ***. Rather, courts will allocate 'parental responsibilities' (formerly custody) and 'parenting time' (formerly visitation)."); Pub. Act 99-85 (eff. Jan. 1, 2016) (adding 750 ILCS 46/802(a)) (when issuing a judgment relating to custody in a parentage proceeding, the court must apply the standards of the Marriage Act). Thus, under our new laws, the designation of one or both parents as "custodial" parents is largely a thing of the past. For all of these reasons, I believe that the majority wrongly adopts the position that the Department cannot pursue child support without a formal court order awarding Nora custody.

¶ 58 *Common-Law Duty of Child Support*

¶ 59 Even beyond the support provided by the Public Aid Code, the common law of Illinois supports the Department's ability to seek a child support order from Alfredo under the facts of this case. The Department argues that Alfredo owes a duty of support because he has admitted that he is the father of the children for whom Nora is seeking support. This is a correct statement of the law: fathers (and mothers) have a legal duty to support their children.

¶ 60 Contrary to Alfredo's arguments, statutes such as the Marriage Act and the Parentage Act are not the primary (let alone the sole) source of parents' duty to support their children. Rather, this has been a fundamental principle at common law for centuries. "A parent's duty to support his or her minor child is among the oldest principles of law." *People ex rel. Sheppard v. Money*, 124 Ill. 2d 265, 269 (1988); see also *Dwyer v. Dwyer*, 366 Ill. 630, 634 (1937) ("[t]he duty of a parent to support his minor child arises out of the natural relationship"); *Plaster v. Plaster*, 47 Ill. 290, 291 (1868) ("The law of nature, the usages of society, as well as the laws of all civilized countries, impose the duty upon the parent of the support, nurture and education of children.").

¶ 61 This duty of support is not affected by whether the parents are, or are not, married. Within a legally intact marriage, statutes have required married parents to pay for the support of their

- 13 -

children as far back as 1874. See *Carson Pirie Scott & Co. v. Hyde*, 39 Ill. 2d 433, 434 (1968) (discussing the Family Expense Act (Ill. Rev. Stat. 1965, ch. 68, ¶ 15), which provided that "[t]he expenses of the family and of the education of the children shall be chargeable upon the property of both husband and wife, or of either of them"); see also 750 ILCS 16/15 (West 2014) (the unexcused failure to support one's children is a Class A misdemeanor regardless of the defendant's marital status). The Paternity Act codified the extension of this duty to unmarried fathers, but it did not release married fathers from their historic duty. Ill. Rev. Stat. 1959, ch. 106 ¾, ¶ 51 *et seq.* Legally speaking, the fact that Nora and Alfredo are still married does not affect Alfredo's duty of support toward his children. Moreover, the obligation to support one's children is not affected by whether the obligor parent has, or does not have, legal or physical custody of the children. *Turk*, 2014 IL 116730, ¶ 31; *In re Estate of Trevino*, 381 Ill. App. 3d 553, 557 (2008).

¶ 62 The majority suggests that this common-law duty of parents to support their children has been abrogated by the enactment of statutes such as the Marriage Act and the Parentage Act. See *supra* ¶¶ 25-26. However, the majority wholly fails to support this suggestion. To the contrary, as the majority itself notes, courts have held that "no Illinois statute relieves parents of their common law duty to support their children." *Supra* ¶ 25 (citing *Eckiss*, 261 Ill. App. 3d at 785). When the General Assembly determined that marriage and divorce should henceforth be regulated entirely by statute, it expressly invalidated common-law marriages. See 750 ILCS 5/214 (West 2014) (invalidating common-law marriages contracted in Illinois after June 30, 1905). The majority cannot identify any similar statute abrogating the common-law duty of child support.

¶ 63 Moreover, courts continue to recognize that common-law duty. Indeed, *M.J.*, upon which the majority relies, addressed the issue of whether the Illinois Parentage Act "precludes common law claims for child support." *M.J.*, 203 Ill. 2d at 537. In identifying this as the legal issue, the supreme court implicitly recognized the continuing vitality of the common-law duty of support unless specifically abrogated by a statute. The supreme court held that the mother there could bring common-law claims seeking child support, because "if the legislature had intended to bar common law actions for child support, it would have clearly stated its intent, and we will not imply a legislative intent where none is expressed." *Id.* at 540. Nothing in *M.J.* supports the majority's strained conclusion that the supreme court did not recognize the broad and vibrant common-law duty of child support or that it intended to limit that duty only to artificial-insemination cases. *Supra* ¶ 27. Rather, read in context, the supreme court merely wished to emphasize that every artificial-insemination case must be decided on the facts of that case, and thus its holding was limited to the case before it. See *M.J.*, 203 Ill. 2d at 537-38, 542. However, the supreme court also noted that the public policy of Illinois recognizes "the right of *every* child to the physical, mental, emotional, and monetary support of his or her parents" (emphasis added) (*id.* at 539), and that courts have "a duty to ensure that the rights of children are adequately protected" (*id.* at 540). Further, given the majority's acknowledgement that the Public Aid Code imposes a duty of support upon all parents, married or otherwise (*supra* ¶ 29), there already exists a legal cause of action for married parents requiring child support. There is no reason to fear a "flood" of lawsuits between parents merely because the duty of support has a basis in the common law of Illinois as well as in its statutes. Thus, I see no basis for the majority's cramped view of the scope of the common-law duty of child support.

¶ 64    *Interpreting Section 802(c) of the Parentage Act in Harmony With the UIFSA*

¶ 65    The final piece of this puzzle is the issue directly posed by the dismissal of the Department's petition: was the trial court correct in deciding that it could not enter a child support order under the UIFSA, because doing so would result in a *de facto* custody order under section 802(c) of the Parentage Act, a result prohibited by the UIFSA? Under any reasonable construction of the relevant statutes, the answer is no.

¶ 66    Throughout this litigation, the Department has asserted that it brought this action under the UIFSA and the Public Aid Code: the UIFSA is the mechanism for interstate child support enforcement, and the Public Aid Code establishes Alfredo's duty to support his children. Thus, there was no basis at all for the trial court's application of the Parentage Act—nothing in the Department's petition requires the application of that act.

¶ 67    The majority misses this essential point, stating that the "entry of a paternity order and a determination of child support are the two basic orders needed to complete a paternity action." *Baldassone*, 282 Ill. App. 3d at 333. I have no quarrel with this statement as a general matter, but this case is not a "paternity action." Alfredo has already admitted his paternity of the children for whom the Department seeks child support.

¶ 68    Rather, the UIFSA permits the entry of a child support order whenever a court finds "that a respondent owes a duty of support." 750 ILCS 22/401(c) (West 2014). More specifically, the UIFSA provides that a court may enter a child support order "if the tribunal determines that such an order is appropriate and the individual ordered to pay is: *** a presumed father of the child" or "an acknowledged father" of the child. 750 ILCS 22/401(b) (West 2014). Here, this court has found that Alfredo owes a duty of support. Further, Alfredo has acknowledged that he is the father of the children; he is also their presumed father, as they were born to Nora during Alfredo's marriage to her. The statutory requirements are plainly met here, and the trial court was authorized to issue a child support order under the UIFSA. There is simply no basis for applying the Parentage Act in this case.

¶ 69    Moreover, even if the application of the Parentage Act were somehow warranted, bedrock principles of statutory construction would prevent the interpretation of section 802(c) advanced by the trial court and the majority, because that interpretation has the effect of rendering the entry of a child support order—one of the core purposes of the UIFSA—impossible.

¶ 70    In construing a statute, our task is to "ascertain and give effect to the legislature's intent." *Lieb v. Judges' Retirement System*, 314 Ill. App. 3d 87, 92 (2000). To determine that intent, we begin by examining the language of the statute, which is the most reliable indicator of the legislature's objectives in enacting a particular law. *Lee v. John Deere Insurance Co.*, 208 Ill. 2d 38, 43 (2003). "One of the fundamental principles of statutory construction is to view all provisions of an enactment as a whole," and thus "words and phrases must be interpreted in light of other relevant provisions of the statute." *J.S.A. v. M.H.*, 224 Ill. 2d 182, 197 (2007). Under the doctrine of *in pari materia*, "where different statutes touch on the same or related subject matter, we consider them together so as to render a harmonious result." *State Farm Mutual Automobile Insurance Co. v. Burke*, 2016 IL App (2d) 150462, ¶ 39.

¶ 71    Finally, we must construe the statute to avoid rendering any part of it meaningless or superfluous. *Blum v. Koster*, 235 Ill. 2d 21, 29 (2009). "We may also consider the consequences that would result from construing the statute one way or the other. [Citation.] In

doing so, we presume that the legislature did not intend absurd, inconvenient, or unjust consequences." *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 440-41 (2010).

¶ 72 The UIFSA, the Public Aid Code, and the Parentage Act all touch on a common subject—the establishment and enforcement of child support obligations. Thus, they must be read together to reach a harmonious result. *Burke*, 2016 IL App (2d) 150462, ¶ 39. Further, we must read these statutes in a manner that will not render any of their provisions meaningless or absurd.

¶ 73 The UIFSA, a uniform act adopted by every state, was created to facilitate the entry and reciprocal enforcement of child support orders across state lines. See *In re Marriage of Edelman*, 2015 IL App (2d) 140847, ¶ 15; *In re Marriage of Hartman*, 305 Ill. App. 3d 338, 342 (1999). The UIFSA expressly permits the establishment of a child support obligation when the obligor owes a duty of support. 750 ILCS 22/401(c) (West 2014). This remedy is available to all parents—there is no exclusion in that statute for parents to whom the provisions of the Parentage Act might apply.

¶ 74 I now turn to the Parentage Act of 2015. As stated in the "public policy" provision of the Parentage Act:

> "Illinois recognizes the right of every child to the physical, mental, emotional, and financial support of his or her parents. The parent-child relationship, including support obligations, extends equally to every child and to his or her parent or to each of his or her 2 parents, regardless of the legal relationship of the parents ***." Pub. Act 99-85 (eff. Jan. 1, 2016) (adding 750 ILCS 46/102).

Section 802 governs the judgment that may be entered by a court in a parentage case, and states, in pertinent part:

> "The judgment shall contain or explicitly reserve provisions concerning any duty and amount of child support and may contain provisions concerning the custody and guardianship of the child, parenting time privileges with the child, and the furnishing of bond or other security for the payment of the judgment ***.
>
> ***
>
> (c) If a judgment of parentage contains no explicit award of custody, the establishment of a child support obligation or of parenting time rights in one parent shall be considered a judgment granting custody to the other parent. If the parentage judgment contains no such provisions, custody shall be presumed to be with the mother; however, the presumption shall not apply if the father has had physical custody for at least 6 months prior to the date that the mother seeks to enforce custodial rights." Pub. Act 99-85 (eff. Jan. 1, 2016) (adding 750 ILCS 46/802).

¶ 75 The trial court thought that section 802(c) meant that it could not enter a child support order on the Department's petition under the UIFSA, because if it did so, that would be "considered a judgment granting custody" to Nora, and the UIFSA states that courts may not enter orders "relating to child custody" in UIFSA proceedings. Pub. Act 99-119 (eff. Jan. 1, 2016) (adding 750 ILCS 22/104(b)(2)). However, if this interpretation of section 802(c) were correct, a court could never enter a child support order under the UIFSA—any child support order would *always* be a *de facto* custody order, which in turn would always be forbidden by the UIFSA.

¶ 76 The majority suggests that the problem posed by this reading of section 802(c) will be avoided if a prior custody determination is already in place before the child support is ordered.

However, nothing in section 802(c) supports this conclusion—there is no limitation in section 802(c) for cases in which custody has already been awarded. The only limitation imposed by the actual words of section 802(c) is whether the judgment of parentage contains an "explicit award of custody." On its face, this language appears to pose an insurmountable catch-22: regardless of whether a child support order explicitly awards custody or contains no explicit award of custody (and thus is a *de facto* award of custody to the other parent), it will always be an order "relating to child custody" and thus cannot be entered under the UIFSA.

¶ 77 It cannot have been the intention of the General Assembly, which chose to enact the UIFSA, to render that entire statute nugatory through the operation of section 802(c) of the Parentage Act. This would be an absurd result, which we must avoid. *Solon*, 236 Ill. 2d at 441. Moreover, the Department noted that our prior opinion (vacated upon the grant of rehearing) would have prevented the entry of child support orders under the UIFSA, thereby imperiling the millions of dollars of federal funding provided to Illinois to finance its child support enforcement efforts. The majority's reading of section 802(c), which would likewise prevent the entry of child support orders under the UIFSA, poses the very same threat.

¶ 78 We must read section 802(c) in a manner that will harmonize with the purposes of the UIFSA and the Public Aid Code, not undermine them. We can do this by reading section 802(c) to permit a court to enter a child support order that explicitly states that the order is limited to child support and does not affect custody or visitation. Contrary to the majority's characterization (*supra* ¶ 37), such an interpretation does not read section 802(c) out of the Parentage Act. Rather, it simply permits a court to exercise its inherent authority to limit the scope of its own orders by clarifying that a child support order is not to be construed as a custody order. Nothing prevents the trial court in this case from entertaining the Department's petition and entering a child support order that contains language confirming that the issues of custody and visitation are not before the court and that the order shall have no effect on those issues.

¶ 79 For all of these reasons, I believe that the correct course is to reverse the trial court's dismissal of the Department's petition and remand for the setting of an appropriate amount of support and the determination of any arrearage. I therefore respectfully dissent.